EDWARD N. SCHMIDT AND MORRIS HOLLANDER *v.* HERMAN H. KATTENHORN AND GERHARD AHRENS.

In an action for damages for the unlawful conversion of certain goods, it appeared that the goods in question were sold by the plaintiffs to the defendants, on an agreement that they were to be paid for *in cash*. Previous to delivering the goods,

the plaintiffs made inquiries, in respect to defendants, as to whether they could be "trusted with a cash article," &c.; and, receiving a favorable answer, the goods were sent to defendants' store, by a cartman, in the ordinary way. Bills were sent in on the same day, followed by a call for the money on the day following, and on several days after. Defendants, however, refused to pay cash, but offered certain bills of exchange, drawn by plaintiffs, for a part of the amount, and the balance in cash.

*Held*, that this evidence did not show an unqualified delivery of the goods, but that it was a proper question for the jury, whether, in making the delivery, the plaintiffs intended to waive the condition for payment in cash; and that a motion to dismiss the complaint, on the ground that the evidence showed an unqualified delivery, was properly denied. DALY, F. J., *dissented*.

APPEAL by defendants from a judgment upon a verdict. The facts are fully stated in the opinions.

*Fullerton & Dunning*, for the appellants.

I. The judge ought to have granted the motion to dismiss the complaint, as the testimony, adduced on the part of the plaintiffs, showed that there was an unqualified delivery; and, the delivery being absolute, the title to the goods passed to the vendees: such absolute and unconditional delivery being regarded as a waiver of the condition. *Chapman* v. *Lathrop*, 6 Cowen, 110; *Lupin* v. *Marie*, 6 Wend. 77; affirming 2 Paige, 169; *Conway* v. *Bush*, 4 Barb. 564; *Jones* v. *Bredner*, 10 Barb. 193; *Brewer* v. *Salisbury*, 9 Barb. 511; *Genin* v. *Tompkins*, 12 Barb. 280; *Dows* v. *Green*, 16 Barb. 72; *Joyce* v. *Adams*, 4 Seld. 296; *Smith* v. *Lines*, 1 Seld. 44; *Caldwell* v. *Bartlett*, 3 Duer, 352. *a.* The plaintiffs reposed confidence in the firm of the defendants as a basis of the delivery of the property, without requiring cotemporaneous payment or satisfaction. *Clapp* v. *Rogers*, 1 E. D. Smith, 552. *b.* They did not ask for cash, but for a check—a check is a mere evidence of debt, the same as a note; they therefore waived the condition of cash payment on or after delivery. *Buck* v. *Grimshaw*, 1 Edwards, 140.

II. There is no evidence that, at the time of making the bargain, anything was said about cash payment on delivery; on the

contrary, the plaintiffs were willing to take a note. *Joyce* v. *Adams*, 4 Seld. 296.

*J. Van Namee*, for the respondents.

I. As the character of the delivery was a question of fact, it is absurd to say that on the testimony the complaint should be dismissed. *Smith* v. *Lynes*, 1 Seld. 41.

II. Trover was the proper remedy, or, rather, an action in the nature of an action of trover, under the circumstances. *Leven* v. *S.ith*, 1 Denio, 571.

Hilton, J.—The plaintiffs sued for the damages resulting from the wrongful conversion of their property by the defendants. At the trial it appeared, from the evidence on the part of the plaintiffs, that the property consisted of brandy in casks, sold by the plaintiffs to the defendants for cash less 4 per cent., and delivered on the 24th and 25th of June, 1857. The bills were sent on the same day the goods were delivered, and followed up by the plaintiffs calling the next day for the money. Not finding the defendants at their place of business, a demand was made of their bookkeeper. Failing to get the money, the plaintiffs sent their clerk, who was told by the defendants to come again in a couple of days, and they would pay. After this, and about five or six days after the delivery, the plaintiffs again called and demanded the cash or the brandy. The defendants refused to give either, but offered to pay in two protested bills of exchange drawn by the plaintiffs, with a small sum in cash additional to make up the amount of the plaintiffs' claim for the goods thus purchased. It also appeared that after the sale was agreed upon, but before the brandy was delivered, the plaintiffs made inquiries respecting the trustworthiness of the defendants, to learn whether they could be trusted with a cash article; and, the information being satisfactory, the goods were thereupon delivered. The plaintiffs having rested their case, the defendants moved to dismiss the complaint upon the ground that this evidence showed a delivery of the property without qualifi-

cation, and therefore this action could not be maintained. The motion was denied, and the defendants excepted. Evidence was then introduced by the defendants, and the case submitted to the jury upon a charge of the judge to which no exception was taken, and a verdict found for the plaintiffs for the amount claimed.

On this appeal by the defendants, we are to review the decision of the judge upon the motion to dismiss the complaint, and to determine whether the evidence thus given was sufficient to warrant its submission to the jury upon the question, whether there had been an unqualified delivery of the property by which the condition of the sale was waived.

I think the evidence was clearly sufficient to show that the plaintiffs did not intend to waive the condition of the sale, or to make an absolute delivery; and it is equally apparent from it that the defendants did not suppose the condition was intended to be waived, or that the delivery was unqualified. *Leven* v. *Smith*, 1 Denio, 571. On such testimony, the judge very properly held that it was for the jury to say what was the intention of the parties upon which such a delivery was made; and he was right in refusing to dismiss the complaint. *Smith* v. *Lynes*, 1 Seld. 41; *Furniss* v. *Holt*, 8 Wend. 256; *Smith* v. *Dennie*, 6 Pick. 266; *Russell* v. *Minor*, 22 Wend. 662; *Van Neste* v. *Conover*, 5 How. P. R. 148. The judgment should be affirmed.

BRADY, J.—The brandies purchased were delivered on the 24th and 25th of June, 1857. The purchases were for cash. On the day after the delivery of the first purchase, the defendants sent an order for the lot of the 25th of June, requesting the plaintiffs to send the bill by the bearer of their order. The bills were sent with the brandy, and the terms are stated on the bills to be for cash less 4 per cent. The bills were marked correct by the clerk of defendants. The plaintiff Hollander went to the defendants' store on the day after each delivery, and demanded a check from a young man in charge of the store, the defendants being absent. Hollander told him he had sold low for cash. The young man said he could not draw a check. Hollander then

sent his bookkeeper to get a check. The bookkeeper called twice. On the second occasion, he saw the defendant Kattenhorn, who said "Come in a couple of days, and I will pay it." The bookkeeper called, as requested, and the defendant Kattenhorn then offered bills of exchange drawn by the plaintiffs, and some money. Hollander, on the same day that this offer was made, went with his bookkeeper to the defendants, and demanded from Kattenhorn cash or the brandies. The defendants refused either. This interview was the only one between Hollander and the defendant Kattenhorn after the delivery, as appears by the testimony of both; and in this interview the plaintiff Hollander was for the first time advised by the defendants personally that they would not pay cash, or give up the brandy. He was probably informed the same day, by his bookkeeper, that the defendant Kattenhorn had offered bills of exchange in payment. It also appeared that the plaintiff Hollander made inquiries about the defendants—not before the purchase, but *after* the bargain was made—to know of their trustworthiness. He says "I wanted to know whether I could *trust him* (Kattenhorn) *with a cash article*. I said I must be cautious about *delivering;* and I said to him (Kattenhorn) that I was pleased with the good account I got of him."

On these facts I refused to dismiss the complaint, and my refusal, I think, was proper. The question presented by them was, whether the delivery was intended to be complete until the performance of the condition of payment of the cash. That question was submitted to the jury, and they answered in favor of the plaintiffs. The evidence shows that Hollander had satisfied himself that the defendants could be trusted with a cash article, without, at the moment of delivery, exacting the cash. His inquiries were not about the general credit or responsibility of the defendants—that was immaterial to him, his sale being for cash; and the demands upon the clerk of the defendants, and upon the defendant Kattenhorn, show that there was no intention to relinquish the payment of the cash. The promise of the defendant Kattenhorn to pay in a couple of days, after he was seen for the *first time*,

shows that he so understood the matter, and that he felt bound to comply with the terms of sale. It was not in evidence, at this time, that Hollander asked Kattenhorn for a note. That was proved on the defence, after which no motion was made to dismiss the complaint, and the cause was submitted to the jury. The fact is, that Behrens, who testified to the demand for the note, was mistaken, if he did not swear falsely. He proves two interviews, after the delivery, between Kattenhorn and Hollander, in one of which the former offered the bills of exchange; and states that in the other, which *occurred two or three days previously*, Hollander asked for the note. The defendant Kattenhorn swears that he first saw Hollander ten days or two weeks after the purchase—that the bookkeeper was present; and that he offered the bills of exchange. Hollander corroborates this. He says that he did not see Kattenhorn until he saw him with the bookkeeper, when the bills of exchange were offered for cash. There was no interview, then, between them, prior to that after the delivery, according to their own statements, and Behrens was in error. That was, however, if true, only a circumstance to be considered, with others, on the question submitted to the jury.

I think the testimony warrants the presumption that Kattenhorn did not intend to pay cash for the goods, and that the difficulty in finding him, or the other defendant, for the purpose of demanding the cash, arose from the fact that there was a negotiation pending for the purchase of the bills of exchange offered in payment, and that the defendants found it convenient to avoid the demand. Three visits were made to their place of business for the purpose of making that demand, and the object of those visits communicated to the clerk; yet, there is no evidence that they sent any communication to the plaintiffs on the subject. In addition to this, we have the fact that when Kattenhorn was finally seen, he promised to pay in a couple of days; he said nothing, however, about bills of exchange, and, by this promise, induced the plaintiffs to delay any action until the expiration of that time. The whole case does not show fair dealing, in a commercial point of view, on the part of the defendants. It con-

Schmidt v. Kattenhorn.

vinces me that the defendants knew well that the plaintiffs expected to be paid in cash, and that they did not intend to part with their property unless such payment was made. I thought so at the trial, and I think so still. In my opinion the judgment should be affirmed.

DALY, First Judge, (dissenting).—I do not see how it is possible, in this case, to sustain an action against the defendants for converting the property. The sale was for cash, but the delivery was absolute. No condition or qualification was annexed to it. No arts, device, or fraud were practiced by the defendants to get the property into their possession. One of the plaintiffs swore that, after receiving the order, and before delivering the brandy, wanting to know about the trustworthiness of the defendants, he made inquiries to know *if he could trust them with a cash article*, and that the result was satisfactory; that he told Kattenhorn, one of the defendants, that he must be cautious about delivering; that he had made inquiries, and that he was pleased with the good account he got of him ; and, further, that the brandy was given to the cartman with no special instructions, but simply with directions to deliver it. Some days after the delivery, one of the plaintiffs called and asked the defendant Kattenhorn for a check; and, upon the latter saying that he was not prepared, but would be in a few days, the plaintiff asked if he would not be willing *to give his note*, as he (plaintiff) was very short. These facts, in respect to which there was no dispute, show that the sale was complete, that the delivery was unconditional, that no stipulation was exacted or imposed showing that it was to take effect upon the payment of the price, and that no fraud was practiced to effect a delivery. It was a cash sale, in which the article was delivered without exacting the cash at or before the delivery, or leaving it with the understanding that the title was not to pass until the money was paid. There could be no doubt, upon this state of facts, that it was the clear understanding of both parties that the defendants were at liberty to sell the brandy, or make use of it, the moment it was delivered, and that the plaintiffs relied upon the pecuniary

responsibility of the defendant Kattenhorn, with which they were fully satisfied before a delivery was made. See cases collected in the following case of *Lees & Waller* v. *Richardson*. Their only remedy was an action for the price. I think the judgment should be reversed.

Judgment affirmed.